THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

THE HANGAR, INC.

    Plaintiff,

V.                                                                        CAUSE NO. _____

SOUTHEASTERN ASSET MANAGEMENT, LLC
TED E. SUHL, THE LORD'S RANCH BEHAVIORAL
HEALTH CARE SYSTEM, INC. AND DANNY KOPP

    Defendants.

## COMPLAINT

COMES NOW, Plaintiff, The Hangar, Inc., by and through its undersigned counsel, W.O. Luckett, Jr., of Rossie, Luckett, Pinstein & Ridder, P.C., and for its cause of action against the Defendants would respectfully show unto the Court as follows:

### PARTIES

1.     Plaintiff, The Hangar, Inc. (hereinafter "Plaintiff") is a Corporation organized under the laws of the State of Mississippi and qualified to do business in the State of Tennessee having its principal office in the State of Tennessee located at 2930 Winchester Road, Suite 500, Memphis, Tennessee, 38118. The Plaintiff is in the business of aircraft maintenance and repair.

2.     Defendant, Southeastern Asset Management, LLC (hereinafter "Southeastern") Southeastern is the titled owner of the subject Cessna Citation 550 serial number 5500149, and bearing registration number N777AX (hereinafter "Aircraft").

3. Defendant, Ted Suhl (hereinafter "Suhl") is an adult resident citizen of Randolph County, Arkansas, and can be served with process at 1033 Old Burr Road, Warm Springs, Arkansas, 72478. Upon information and belief, Suhl had a lease arrangement and/or agreement with the Aircraft's owner, Southeastern, and has benefited from the repairs performed by the Plaintiff on the Aircraft.

4. Defendant, The Lord's Ranch Behavioral Health Care System, Inc. (hereinafter "The Lord's Ranch") is an Arkansas corporation and can be served with process by serving its registered agent, Joel P. Landreneau, at 1033 Old Burr Road, Warm Springs, Arkansas 72478. Upon information and belief, The Lord's Ranch is an apparent user of the Aircraft and has benefited from the repairs performed by the Plaintiff.

5. Defendant, Danny Kopp, Jr., (hereinafter "Kopp") is believed to be an adult resident citizen of Lawrence County, Arkansas, who can be served with process at 2203 Southeast Third Street, Hoxie, Arkansas, 72433. Kopp was the chief pilot and agent of the owner/lessee of the Aircraft.

## JURISDICTION

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 inasmuch as the parties are citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. The breach of contract, fraud, intentional and negligent misrepresentation complained of by Plaintiff occurred in Shelby County, Tennessee. Thus, venue is proper in the United States District Court for the Western District of Tennessee, Western Division pursuant to 28 U.S.C. § 1391(b).

## **FACTS**

8. On or about July 2006, Defendant Kopp negotiated a Contract/Service Agreement with the Plaintiff, The Hangar, Inc., to perform routine maintenance and repairs, including but not limited to various maintenance issues to a Cessna Citation 550 serial number 5500149, and bearing registration number N777AX.

9. On or about the same time, Kopp delivered the Aircraft to the Plaintiff's facility located at the Memphis International Airport.

10. At all times pertinent hereto Kopp represented himself to be the chief pilot and agent of the owner of the Aircraft, with full authority to speak and act on behalf of Defendants Suhl and The Lord's Ranch, whom Kopp represented to be his employers.

11. Further, at no time did Kopp inform the Plaintiff that the titled owner of the Aircraft was Defendant Southeastern.

12. On or about July 24, 2006 the Plaintiff completed the routine maintenance and repairs to the Aircraft. The charges for the work performed included parts and labor and work performed on the Aircraft's pressurization system, repairs to the battery, blower, fire extinguisher, fuel boost pump, emergency locator beacon, and phase 8 and phase 9 inspections as well as a number of other repairs. The total for all maintenance and repairs performed is Nineteen Thousand Five Hundred Thirty-three and 62/100ths Dollars ($19, 533.62).

13. On July 24, 2006 the Plaintiff presented an invoice to Kopp regarding the services performed. Immediately, Kopp paid the invoice in full by tender of an American Express Card issued in the Defendant Suhl's name.

14. Kopp was the apparent agent for Suhl and/or the other Defendants as well as the pilot

3

in command of the Aircraft. Further, Kopp represented by his actions and by the presentation of the credit card for payment of the service invoice that he had full authority to (1) authorize the Plaintiff to perform routine maintenance and repairs and (2) to pay said invoice resulting from the Plaintiff's performance of such repairs to the Aircraft.

15. Later, Suhl, and upon information and belief, the other Defendants disputed the payment of Plaintiff's invoice with the American Express Company. As a result, an investigatory hearing was conducted by American Express, which resulted in a finding in favor of the Plaintiff.

16. Around this same time, a second dispute was initiated by Suhl which also resulted in a finding by American Express in favor of the Plaintiff.

17. Finally, payment of the Plaintiff's invoice was disputed a third time by Suhl with the American Express Company. On this occasion, Suhl took the position (which he had not taken in the earlier two disputes) that Kopp was not his agent and was not authorized to have the maintenance and repairs performed on the Aircraft by the Plaintiff, nor was Kopp authorized to pay the invoice by using the American Express credit card issued in Suhl's name for such repairs performed. American Express reversed the charges, leaving the Plaintiff's invoice unpaid.

18. Upon information and belief, Suhl, Kopp, The Lord's Ranch, and Southeastern, collectively, engaged in fraud and conspired to receive maintenance and repair services performed by the Plaintiff without paying. Further, upon information and belief, Suhl, Kopp, The Lord's Ranch, and Southeastern, collectively, engaged in fraud and intentionally and/or negligently misrepresented facts which caused American Express to reverse the charges applied to Suhl's American Express credit card, leaving the entire balance of the Plaintiff's invoice unpaid.

19. Further, upon information and belief, Suhl had a lease arrangement and/or agreement

with the Aircraft's owner Southeastern, and that either or both of these Defendants benefited from said repairs.

20. Upon information and belief The Lord's Ranch is also an apparent user of the Aircraft and has likewise benefited from the routine maintenance and repairs which remain unpaid.

21. The Contract/Service Agreement entered into by the parties makes specific provision that any purchases made but not satisfied within thirty (30) days of the date of closing on the invoice bear a service charge of one and one half percent (1 ½%) per month on all past due balances. Further, the contract provides that in the event a third party is employed to collect the outstanding money owed, the "undersigned" agrees to pay reasonable collection costs, including attorney's fees.

## COUNT I
## BREACH OF CONTRACT

22. Plaintiff incorporates by reference paragraphs 1 - 22 of as if fully set forth herein.

23. Plaintiff maintains that the Contract/Service Agreement constitutes a valid and enforceable contract between the Plaintiff and Defendants.

24. Plaintiff further maintains that the Defendants breached the Contract/Service Agreement by failing to comply with the terms of this contract.

25. As a result of the foregoing, Plaintiff has suffered and continues to suffer financial loss.

## COUNT II

## FRAUD AND/OR INTENTIONAL REPRESENTATION

26. Plaintiff incorporates by reference Paragraphs 1-26 as if fully set forth herein.

27. Defendant Kopp represented to Plaintiff that he was the chief pilot and agent for the

owner of the Aircraft, with full authority to speak and act on behalf of Defendants Suhl and The Lord's Ranch, whom Kopp represented to be his employers.

28. After the Plaintiff completed the repairs to the Aircraft and the invoice for such repairs was paid by Defendant Suhl's credit card, Defendant Suhl disputed the charges with the American Express Company. Specifically, Suhl stated that Kopp was not his agent and was not authorized to have the maintenance and repairs performed on the Aircraft by the Plaintiff, nor was Kopp authorized to pay the invoice for such services performed. Subsequently, the charge for Plaintiff's invoice was reversed by the credit card company, leaving Plaintiff's invoice unpaid.

29. Suhl intentionally made the above fraudulent statements to the American Express Company when he knew the same were false, and he made the said statements for the purpose of engaging in fraud and to evade his obligation to pay the Plaintiff's invoice for repairs the Plaintiff performed to the Defendant's Aircraft at the Defendant's agent Kopp's request. Upon information and belief, Kopp is still employed for the Defendants.

30. The Plaintiff reasonably relied on the representations made by Kopp, and in reliance thereon fully performed all routine maintenance and repairs to the Defendant's Aircraft, including but not limited to work performed on the Aircraft's pressurization system, repairs to the battery, blower, fire extinguisher, fuel boost pump, emergency locator beacon, and phase 8 and phase 9 inspections, as well as a number of other repairs. The total for all maintenance and repairs performed is Nineteen Thousand Five Hundred Thirty-three and 62/100 Dollars ($19,533.62).

31. Suhl is responsible for the actions of his employee, Kopp, pursuant to general agency principles and the theory of *respondeat superior*. Upon information and belief, Suhl and the other Defendants fraudulently conspired and instructed Kopp to negotiate the Contract/Service Agreement

with the Plaintiff to perform routine maintenance and repairs to the Aircraft and are responsible in this case for the actions of their employee who entered into a contract with the Plaintiff, which the Plaintiff acted on to its detriment.

32. Further, at no time did Kopp inform the Plaintiff that the titled owner of the Aircraft was Defendant Southeastern. Upon information and belief, all Defendants were, collectively, engaged in the fraud and have benefited from the services provided by the Plaintiff to the Aircraft.

33. As a result of the fraudulent actions and statements of Suhl and upon information and belief, the other defendants, the entire balance of the Plaintiff's invoice for services performed has been left unpaid, and the Plaintiff has suffered and continues to suffer significant financial loss.

## COUNT III
## NEGLIGENT MISREPRESENTATION

34. Plaintiff incorporates by reference Paragraphs 1-34 as if fully set forth herein.

35. Suhl and upon information and belief the other defendants made false, misleading, or materially incomplete misrepresentations to the American Express Company when they represented that Kopp was not the chief pilot and agent of the owner of the Aircraft, with full authority to speak and act on behalf of Defendants Suhl and The Lord's Ranch.

36. Additionally, Suhl and upon information and belief the other Defendants failed to exercise reasonable and competence when they instructed Kopp to contract with the Plaintiff to perform routine maintenance and repairs to the Aircraft and promise to pay for same upon completion.

37. Upon information and belief, Suhl and the other defendants fraudulently conspired and instructed Kopp to represent himself to be the chief pilot and agent of the owner of the Aircraft, with full authority to speak and act on behalf of the Defendants, and such acts and statements were made to

induce the Plaintiff to act and perform the routine maintenance and repairs to the Aircraft, which the Defendants have failed to pay the invoice for to date.

38.     Plaintiff justifiably relied on Defendants' representations, and as a result has suffered significant financial injury.

## UNJUST ENRICHMENT

39.     Plaintiff incorporates by reference Paragraphs 1-39 as if fully set forth herein.

40.     Pursuant to the Contract/Service Agreement entered into by the parties, the Plaintiff rendered and performed valuable repairs to the Defendant's Aircraft, for which the Defendants have received a benefit.

41.     Upon completion, the repairs to the Aircraft were accepted by the Defendants without objection, until such time that the services were paid by Suhl's credit card.

42.     Pursuant to the Contract/Service Agreement, the Defendants were aware that the Plaintiff expected to be paid for such repairs upon completion.

43.     The Defendants have benefited and are currently benefiting from the repairs performed to the Aircraft. Because the Defendants have benefited, and because pursuant to the Contract/Service Agreement the Defendants agreed to compensate the Plaintiff for the benefit resulting from its performance, Defendants will be unjustly enriched if they do not compensate the Plaintiff pursuant to the terms of the said contract. Further, the amount of the Plaintiff's damages is a liquidated sum and it is entitled to recover prejudgment interest.

## PUNITIVE DAMAGES

44.     Plaintiff incorporates by reference Paragraphs 1-44 as if fully set forth herein.

45.     Plaintiff alleges and avers that the Defendants engaged in fraudulent conduct that

warrants the recovery of punitive damages against the Defendants and to deter the Defendants and others from committing similar wrongs in the future.

46.     Defendants acted intentionally, maliciously and recklessly, willfully and wantonly with respect to their conduct and as a result the Plaintiff has suffered and continues to suffer financial loss.

WHEREFORE, PREMISES CONSIDERED, Plaintiff The Hangar, Inc., demands judgment jointly and severally of, from and against Defendants, Southeastern Asset Management, LLC, The Lord's Ranch, Ted Suhl and Danny Kopp in the sum of Nineteen Thousand Five Hundred and Thirty-three and 62/100ths Dollars ($19, 533.62), plus Six Hundred Eighty-three and 66/100ths Dollars ($683.66) for the American Express chargeback, plus interest to date in an approximate amount of Three Thousand Five Hundred Sixteen and 05/100ths Dollars ($3,516.05) together with continuing accruing interest together with reasonable attorney's fees at an amount estimated by trial at present to be approximately Five Thousand and 00/100ths Dollars ($5,000.00), together with punitive damages based upon the fraud and intentional misrepresentation of One Hundred Thousand and 00/100ths Dollars ($100,000.00) plus reasonable attorneys' fees pursuant to both the repair contract with The Hangar, Inc., including but not limited to any other damages the Court deems proper under Tennessee Law.

Respectfully Submitted,

ROSSIE, LUCKETT PINSTEIN
& RIDDER, P.C.


____*s/ W.O. Luckett, Jr.*____
W.O. LUCKETT, JR. #10871
1669 Kirby Parkway, Suite 106
Memphis, Tennessee 38120
Phone: 901-763-1800
Fax: 901-767-6514
woluckett@lucketttyner.com

ATTORNEY FOR PLAINTIFF